655 So.2d 1227 (1995)
Paul GRUNEWALD and Nancy Grunewald, Appellants,
v.
Jesse F. WARREN, Jr., and Business Brokers of North Florida, Inc., Appellees.
No. 93-3980.
District Court of Appeal of Florida, First District.
May 25, 1995.
*1228 Laura S. Thrasher, Tallahassee, for appellants.
Sandra S. Hood of Munroe & Hood, P.A., Tallahassee, for appellee Jesse F. Warren, Jr.
Robert C. Crabtree and Marjorie M. Cain of Fuller, Johnson & Farrell, P.A., Tallahassee, for appellee Business Brokers of North Florida, Inc.
BENTON, Judge.
Jesse F. Warren, Jr., and Business Brokers of North Florida, Inc. (Business Brokers) argued successfully below that the value *1229 of Paul and Nancy Grunewald's negligence and breach of contract claims against them did not exceed $2,550, the amount realized in a bankruptcy sale of certain assets. After the circuit court dismissed their first amended complaint on grounds the amounts in controversy were less than the jurisdictional minimum, Mr. and Mrs. Grunewald appealed. We reverse.
Jurisdiction of the circuit court depends on the good faith allegations of the plaintiffs, not on the trial court's preliminary determination of the amount which they may actually recover. The rule for "determining the jurisdiction of a court as to the amount involved is the amount claimed in good faith. Rocco v. Coffey, Fla.App. 1964, 163 So.2d 21 [2nd DCA]." Norris v. Southern Bell Tel. and Tel. Co., 324 So.2d 108 (Fla. 3d DCA 1975); Seaboard Air Line Ry. v. Ray, 52 Fla. 634, 42 So. 714 (1906). See White v. Marine Transp. Lines, Inc., 372 So.2d 81 (Fla. 1979); Richter Jewelry Co. v. Harrison, 147 Fla. 732, 3 So.2d 387 (1941). To decide whether appellants have stated a cause of action for damages in excess of the circuit court's jurisdictional threshold of $15,000, § 26.012(2)(a), 34.01(1)(c)4, Fla. Stat. (1993), the allegations of the first amended complaint are properly looked to.

Damages Claimed for Failure to Receive Full Purchase Price
When they sold a card and gift shop (Something Special) to Tracy Sullivan, Business Brokers acted as the Grunewalds' agent, their complaint alleges. The Grunewalds retained Mr. Warren, an attorney, to protect their interests in the transaction and to handle the closing, again according to the first amended complaint, which also alleges that Business Brokers was contractually bound to find a "worthy and capable" buyer willing, ready, and able to pay a purchase price of approximately $29,000.
The sales contract eventually entered into called for Ms. Sullivan to pay $5,000 at closing, and for the Grunewalds to finance the remainder of the purchase price. The inventory was to serve as collateral to secure repayment of the Grunewalds' implicit loan of purchase money. Ms. Sullivan agreed to pay the remaining $24,163.96, allegedly the value of the business inventory at the time of the sale, over a period of time, together with interest. Appellants do not suggest that plaintiffs' allegations regarding the sales price were made other than in good faith.
Hardly a year had passed before Ms. Sullivan ceased making the agreed installment payments and filed for protection under Chapter 7 of the bankruptcy code. The Grunewalds sought but were denied secured creditor status in the bankruptcy proceedings. In the course of this proceeding, the bankruptcy trustee sold Something Special's inventory for $2,550 in a bulk sale; and, in due course, the bankruptcy court entered an order approving the sale. This order is of record in the present case.
Appellants have stated claims for negligence and breach of contract against Business Brokers that fall within the circuit court's jurisdiction. The amount at issue on these claims does not depend on the value of the inventory when Ms. Sullivan defaulted. The Grunewalds allege that Business Brokers acted negligently and breached the brokerage agreement by failing properly to investigate the purchaser, in order to determine her ability to purchase the business by making the necessary payments. They allege that Business Brokers' negligence and breach of contract were the proximate cause of their not receiving full payment for their business. Liability on the part of Business Brokers to the Grunewalds, if any, is limited, not by the value of the inventory, but by the amount of the sales price that remains unpaid.

Damages Claimed For Loss of Collateral
The first amended complaint also alleges negligence and breach of contract against Mr. Warren on the theory that he breached a legal duty when he failed to prepare a security agreement that would have perfected a security interest for the Grunewalds in Something Special's inventory. In this connection, appellants allege that, as a "direct and proximate result ... [of the absence of] a security agreement, [they] received nothing for their claim [in the bankruptcy proceeding] and lost all right in and to the collateral which was to secure" Ms. Sullivan's debt to them.
As to each count, the first amended complaint alleges "an action ... which accrued *1230 after July 1, 1992, for damages which exceed $15,000.00." As to Mr. Warren, the theory evidently is that the bankruptcy trustee would have abandoned the inventory to them if they had been secured creditors; and that they could then have liquidated on a retail basis or sold the business to a qualified buyer at or near market value, and in that way received more than $15,000.
By motion to dismiss the first amended complaint, Mr. Warren responded that any damages the Grunewalds sustained as a result of not being secured creditors in the bankruptcy proceeding cannot exceed the value of the inventory, because the inventory was the sole collateral for the loan which was not repaid. This is plainly correct. Mr. Warren also argues, however, that the Grunewalds, by virtue of their failure to object in the bankruptcy court to the sale of Something Special's assets for $2,550, are estopped from challenging that valuation in the present suit. We reject this contention.
The ad damnum clause in a complaint is not determinative on the jurisdictional question "when the real demand or value of the property involved otherwise clearly appears, and it is plain that the amount stated is in excess of the real demand." 13 Fla.Jur.2d, Courts and Judges § 94; see also A. Mortellaro and Co. v. Atlantic Coast Line R. Co., 91 Fla. 230, 107 So. 528 (Fla. 1926); Soler v. Independent Fire Ins. Co., 625 So.2d 905 (Fla. 3d DCA 1993) (record on appeal did not demonstrate that plaintiff's jurisdictional allegation was made other than in good faith); Sullivan v. Nova Univ., 613 So.2d 597 (Fla. 5th DCA 1993) (bare allegation in complaint that amount in controversy was $6,631.12 did not confer jurisdiction upon circuit court where university attached to its complaint documentation indicating that student owed less than the $5,000 jurisdictional amount); Neumann v. Brigman, 475 So.2d 1247 (Fla. 2d DCA 1985); Whitley v. Phil-Nick's Inc., 451 So.2d 925 (Fla. 1st DCA 1984).
If it clearly appeared of record that the value of the inventory which the Grunewalds would have recovered as secured creditors was $15,000 or less, appellants' jurisdictional allegations could not carry the day and their first amended complaint would have been properly dismissed. Separate and distinct claims, even against the same defendant, cannot be aggregated in order to meet the jurisdictional threshold, Walker v. Smith, 119 Fla. 430, 161 So. 551 (1935); Batts v. Florida Dep't of Educ., 631 So.2d 369 (Fla. 4th DCA 1994), at least absent a class action. See Galen of Florida, Inc. v. Arscott, 629 So.2d 856 (Fla. 5th DCA 1993). Dismissal was not proper here, however, because it does not clearly appear that the proceeds of the bankruptcy sale amounted to the value of the inventory that the Grunewalds would have received, if they had been secured creditors.
Secured creditors are entitled, under 11 U.S.C. § 725, to the proceeds of any disposition of collateral prior to general distribution. "[O]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554 (b). The record strongly suggests that any value the inventory might have had in excess of a duly perfected security interest would have been of inconsequential benefit to the estate. Once the trustee has abandoned property, a secured creditor can foreclose. Chapter 7 of the bankruptcy code contemplates that, to the extent necessary to satisfy secured claims, secured creditors will receive the full value of the collateral securing their claims as of the date of bankruptcy filing. See e.g., First Bank and Trust Co. of Ithaca, N.Y. v. Hart, 8 B.R. 1020, 1022 (S.D.N.Y. 1981).
The essence of the Grunewalds' claim against Mr. Warren is that his alleged negligence (or alleged breach of contract) prevented their obtaining secured creditor status in the bankruptcy proceedings. Because the Grunewalds had previously operated the card and gift shop and were knowledgeable in the trade, they might have been able to sell the inventory at retail or otherwise for more than the trustee was able to get in a bulk sale. See In re Adams, 2 B.R. 313 (M.D.Fla. 1980). If on remand the Grunewalds are able to prove that Mr. Warren is legally responsible for their unsecured status as creditors, there is no legal impediment to their proving damages in excess of $2,550.
*1231 The bankruptcy court's order approving the sale of the business inventory does not purport to establish what the Grunewalds would have been able to obtain if they had sold the assets themselves. While the Grunewalds neither objected to the bulk sale price in the bankruptcy proceeding nor put on any evidence of value there, as unsecured creditors they had little reason to do so. 11 U.S.C. §§ 507, 726. See generally Baxas Howell Mobley, Inc. v. BP Oil Co., 630 So.2d 207, 209 (Fla. 3d DCA 1993). If they had been secured creditors, they might have regained possession of Something Special's inventory, and proceeds from sale of the inventory might have exceeded not only the bulk sale price, see In re Brinson, 153 B.R. 952, 954 (M.D.Fla. 1993), but also the circuit court's jurisdictional minimum. We cannot, in any event, conclude that the plaintiffs' allegations to that effect were not made in good faith.
The Grunewalds have stated causes of action and made demands against both appellees that exceed the jurisdictional limit for county court. Expressing no view concerning the merits of any of their claims, we reverse and remand for further proceedings in circuit court.
MINER and WEBSTER, JJ., concur.